IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**DENZOAL E. SANDERS,**

    **Plaintiff,**

vs.                                           Case No. 1:03CV154-MMP/AK

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the Act) for review of a final determination of the Commissioner of Social Security (the Commissioner), whereby Plaintiff was granted a partially favorable decision awarding him disability as of July 1, 1998, but denying him disability prior to that date during a time when Plaintiff was insured for disability insurance benefits (DIB) under Title II of the Act. Plaintiff was awarded supplemental security income benefits (SSI) filed under Title XVI of the Act from July 1, 1998.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.	**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on June 26, 1995, alleging a disability onset date of May 1, 1995, as a result of degenerative disc disease, low back pain, obesity, and mild non-insulin dependent diabetes. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on February 20, 1997, and entered an unfavorable decision on May 29, 1997. The Appeals Council denied Plaintiff's request for review, and Plaintiff filed a complaint in this Court resulting in a Sentence Four remand on September 30, 1998, based on the government's inability to locate the administrative record. (R. 330-331). Thus, the Appeals Council remanded this cause to the ALJ, who conducted an additional hearing on March 8, 2000, and entered a partially favorable decision on May 4, 2000. This decision was denied review by the Appeals Council, and is now before this Court.

B.	**FINDINGS OF THE ALJ**

The ALJ found that Plaintiff was insured for disability through March 31, 1998, and that he had not engaged in substantial gainful activity since his onset date.

The ALJ further found that Plaintiff suffered from degenerative disc disease, low back pain, obesity, and mild non-insulin dependent diabetes, which are severe impairments within the meaning of the Regulations, but that these impairments did not meet the Listings prior to July 1, 1998.

The ALJ found that two different residual functional capacities applied to Plaintiff's history; one from the date of onset (May 1, 1995) through June 30, 1998, and

1:03CV154-MMP/AK

the second from July 1, 1998, through the date of his decision.  (R. 18).  The ALJ found that Plaintiff was capable of light exertional work with the following restrictions for the first period: a sit/stand option; the occasional ability to climb, balance, stoop, kneel, crouch and crawl; no work at heights or around hazards; and functionally illiterate.  The ALJ added mental limitations, as in the ability to do routine, repetitive tasks in a low demand setting with no change in work setting and requiring close supervision with the ability to concentrate for short periods one after the other throughout the day secondary to moderate pain.  (R. 26-27).  This hypothetical was posed to a vocational expert, who testified that while Plaintiff would not be able to perform his past relevant work, which was heavy, he could perform a number of jobs in the national economy.

The ALJ also found that Plaintiff's residual functional capacity for the period after July 1, 1998, was less than sedentary, requiring more rest breaks than normal and included non-exertional impairments of pain and depression, which considering his age, educational and vocational background rendered him disabled according to the Medical-Vocational Guidelines.  (R. 28).  Thus, the ALJ found Plaintiff disabled for Title II and SSI from July 1, 1998.[1]  (R. 31).

**C.    ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in not finding him disabled before March 31, 1998; specifically, the ALJ failed to give Plaintiff a presumption of credibility regarding his level of pain prior to March 31, 1998.  Plaintiff argues that the ALJ's finding that he

---

[1] Since this disability period is after Plaintiff's insured status had expired, the practical result of this decision is that Plaintiff would received SSI disability benefits only.

was not disabled until July 1, 1998, is arbitrary and ignores the treatment record of Dr. Hauser, who found Plaintiff substantially limited from work in 1995.

The government responds that the medical record supported the ALJ's finding that Plaintiff was not disabled prior to July 1, 1998.  Objective medical tests (MRI) indicated normal or minimal findings prior to this time, and Plaintiff was treated twice during the relevant time period for injuries sustained while using chisels, solder and steel, indicating a level of activity inconsistent with his reported limitations.  Plaintiff himself testified that he helped his wife with yard sales and flea markets during this time period for eight hours at a time.  The medical evidence supported a worsening of his condition with a progression of more serious treatment after July 1, 1998.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.   STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It

is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

     A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E. **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Since Plaintiff has been approved for disability after July 1, 1998, the issue before the Court is whether he was disabled prior to that time. Thus, the only medical evidence relevant to this issue is that prior to this date, which is summarized below.

Dixie County Health Clinic records show treatment from May 23, 1995 to July 26, 1995, for low back pain. (R. 165-173). He was treated with Tylenol, Tylox, Flexeril, and advised to lose weight. (R. 165).

A psychological evaluation done on August 22, 1995, found Plaintiff as "having a very guarded potential for vocational rehabilitation. His motivation for work is questionable since he is applying for SSD. Furthermore, he has been suffering with medical problems for so many years; yet, he has not take any constructive steps to make himself more employable. In today's world, it is untenable to say that he is illiterate and then do nothing about it." (R. 185). Dr. Wells added "he may have some genuine problems with his back pain; however, he is morbidly obese and he has to assume some responsibility for his own weight reduction." (R. 185).

Treatment notes of Dr. Alfred Hauser from September 1995 to October 1995, show that Dr. Hauser discussed diabetes with Plaintiff and found him to be in "severe denial" about his disease and to have "2 small herniations" for which Hauser referred him to Dr. Kennedy for an evaluation. (R. 192-242). An MRI done at this time shows "moderate sized central disc protrusion at L3-4 and small central disc protrusion at L5-S1." (R. 216). Based on the MRI, Dr. Kennedy opted not to perform surgery, but to continue non-operative care. (R. 252).

Dr. Hauser performed a consultative examination on August 31, 1995, and noted that Plaintiff was first injured in 1970 driving a fork lift. (R. 218). He then fell in April 1995, and a car trailer fell on top of him. (R. 218). The physical examination was:

> He has no severe spasm at the low back. There is no tenderness of the quadratus lumborum. There is no suggestions of ridiculer sciatic nerve root damage at this time. There is no gross decrease range of motion of the cervical, thoracic or lumbar sacral spine. Although the patient does complain of stiffness with range of motion. He can go form a prone to supine position on the examining table without difficulty. He ambulates without difficulty. He can [sic] in and out of a chair without difficulty. His fine manipulation is intact. (R. 220).

In spite of these negative findings, Dr. Hauser stated "[b]ased on the patients complaints it would be difficult to recommend him for gainful employment." (R. 220).

Another consultative examination performed on October 11, 1995, by Dr. Kennedy found Plaintiff to have chronic low back pain possibly due to disc herniation (Dr. Kennedy had not yet received the MRI confirming herniation), but he suggested no surgical intervention at the time and suggested that Plaintiff continue with a rehabilitation program through Dr. Hauser. (R. 254).

A Residual Functional Capacity Assessment dated December 2, 1995, states Plaintiff's abilities as occasionally able to lift 50 pounds; frequently able to lift 25 pounds; able to sit, stand, and walk six hours out of an eight hour day; and no other limitations. (R. 122-129).

A Psychiatric Review was completed by a consultant on September 7, 1995, who found Plaintiff to have a Personality Disorder, which was not severe, but limited him to a "wide range of routine tasks." (R. 243-251).

Another Psychiatric Review form completed on October 27, 1995, found Plaintiff to have traits of a personality disorder, which only slightly affected his daily living activities. (R. 262).

Additional records from Dr. Hauser show that on January 3, 1996, Plaintiff's back pain was "subdued by the Ultram." (R. 267).

A medical assessment completed by Dr. Hauser on June 5, 1996, found Plaintiff to be limited in his lifting to five pounds; standing only one hour; sitting 6 to 8 hours; no pushing or pulling; no being around moving machinery, but that Plaintiff "should get herniated discs repaired, under go rehab, and then should be able to return to work force." (R. 266).

Medical records from Dr. Louis Jensen from August 1996 to November 1996 show treatment for lower back pain with medication, specifically Lorset and Flexeril. (R. 300-302). Dr. Jensen opined that "I personally think he is an example of someone if the proper weight reduction and physical therapy exercise, etc would probably work quite well and make him much more comfortable." (R. 301).

As a point of reference, the examination of Plaintiff by Dr. Oscar De Paz on July 24, 1998, is included in this relevant medical history, as well as Dr. Jensen's report of July 29, 1998, in support of the ALJ's finding that Plaintiff's condition had significantly worsened thereby justifying disability after this date.

Plaintiff reported to Dr. De Paz that he was in "severe back pain," with right arm tingling and weakness, such that he was afraid to pick anything up. (R. 385). Plaintiff also reported that his right leg gave away and went numb, which had caused him to fall.

(R. 385). Plaintiff's right arm was also numb. (R. 385). The range of motion examination and neurological exam produced a number of findings indicating weakness, limitation and pain. (R. 386).

Dr. Jensen found him to be depressed and started him on Zoloft and several pain medications. (R. 389).

## F.     SUMMARY OF THE ADMINISTRATIVE HEARING

The hearing was held on March 8, 2000, and Plaintiff's present attorney, Albert Bacharach, was present. (R. 65). Plaintiff was born on November 3, 1953, weighs 260 pounds, is six foot tall, has a sixth grade education, cannot read or write, and lives with his wife and 12 year old son in a double-wide mobile home. (R. 68-69, 74). Up until 1998, he worked in his shop fixing up VCR's and selling them with other things at a flea market. (R. 72). Plaintiff's wife testified because his memory was so poor, and she said that he actually did nothing but sit at the flea market with her, he did not unload or load or take money or make change. (R. 83-84). She also testified that he read only small words and would write some to her, but she was the only person who could read his writing because it was so bad. (R. 84-85).

Plaintiff testified that he was unable to work because of his back pain and inability to concentrate. (R. 90). He states that he is in pain 24 hours a day and has depression because everyone tells him he has it. (R. 91). He says he's depressed because he cannot support his family. (R. 91). Plaintiff states that Dr. Springer treats him for the pain and depression and he is presently on Lortabs and Morphine. (R. 92). He rates his pain at a 20 on a scale from zero to 25 even when he is taking his

medication. (R. 96). He says that he can sit an hour to two hours, he can stand for about an hour, and he can walk about 4 or 5 blocks. (R. 96). He can lift about 25 pounds. (R. 96). Plaintiff claims that he can kneel, bend, and squat. (R. 97). He was in prison from 1971 to 1979. (R. 98). He sometimes vacuums, puts dishes in the dishwasher and clothes in the washing machine, but grocery shops very little, cooks very little, and does nothing for fun. (R. 99-100).

The ALJ posed several hypotheticals to the vocational expert. One is an individual who is limited to a sedentary exertional level, with a sit/stand option, who can occasionally climb, balance, stoop, kneel, crouch, and crawl, with no heights or hazards, and who is functionally illiterate. (R. 102). The ALJ added that the person could do simple routine repetitive tasks, low demand setting, cannot have any changes in the work setting, requiring relatively close supervision, and can maintain concentration for short periods of time secondary to moderate pain. (R. 102). The expert said there were no jobs Plaintiff could perform. (R. 103). Then the ALJ asked about a similar individual, who was limited to sedentary work, with a sit/stand option, and whose only mental limitation was that he was functionally illiterate, and the expert said no jobs would exist which Plaintiff could perform. (R. 104-105). If Plaintiff were limited to light work, and limited to occasional climbing, balancing, stooping, no heights or hazards, and the only mental limitation was that he was functionally illiterate, there were jobs he could perform. (R. 105). The ALJ added that Plaintiff would be limited to simple routine, repetitive tasks, with no changes in the work setting, low demand, close supervision, and short periods of concentration secondary to moderate pain, and expert responded

that there were a number of jobs he could perform. (R. 106). When the attorney added that the individual would be unable to work a normal work day without more rest breaks than normal, the expert said it would eliminate all jobs. (R. 106).

## G.    DISCUSSION

Plaintiff argues that the ALJ should have given Plaintiff a presumption of credibility regarding his level of pain prior to March 31, 1998, and that his finding that Plaintiff was not disabled until July 1, 1998, was arbitrary.

In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991). "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).

The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ cited the applicable pain standard and then cited to the medical evidence for support of his finding that Plaintiff's allegations of pain and limitation prior to July 1, 1998, were not credible.  Despite Plaintiff's contention that Dr. Hauser's treatment notes supported a finding of disability, he found "2 small herniations" and stated that he could not recommend that Plaintiff return to work based on the Plaintiff's subjective complaints.  Further, in a later assessment Dr. Hauser opined that if Plaintiff underwent a repair of the herniations, went to rehabilitation, and lost weight, he would be able to work.  Dr. Kennedy and Dr. Jensen both were of the opinion that Plaintiff could work with physical therapy and weight loss, but the record does not indicate that Plaintiff ever actively sought this type of help.  Dr. Wells, who performed an extensive mental examination, found no depression, but did believe that his lack of motivation to work and improve his condition was the reason his vocational rehabilitation was "guarded."

However, the ALJ found that Plaintiff's condition had significantly worsened as evidenced by an examination on July 24, 1998.  At this examination, Plaintiff's physical findings were significant for pain and limitation.  His reports of pain were more severe and included numbness and right sided weakness.  His mental status was positive for depression and more serious medication was prescribed.  There were no medical records to cover the period from late 1996 until this examination, which supports a logical, not an arbitrary, finding that this exam marked a significant change in his condition.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this 13th day of December, 2004.

s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.